UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION – BAY CITY

IN RE:

TED CHESTER LEZOTTE and
LYNETTE MARIE LEZOTTE,

      Debtors.
_____/

RICKIE EISENMAN and
VALERIE EISENMAN,

      Plaintiffs,

v.

TED CHESTER LEZOTTE and
LYNETTE MARIE LEZOTTE,

      Defendants.
_____/

Case No. 19-21083
Chapter 7 Proceeding
Hon. Daniel S. Opperman

Adv. Proc. No. 19-2054

## OPINION DENYING DEFENDANTS' MOTION TO SET ASIDE DEFAULT JUDGMENT

### Introduction

Before the Court is the Motion of Defendants Ted Lezotte and Lynette Lezotte to Set Aside a Default Judgment entered against them on October 30, 2019 in this Adversary Proceeding to determine nondischargeability of debt pursuant to 11 U.S.C. § 523(a)(2)(A) and (B) and (a)(4).

1

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of particular debts).

## Facts

During the time period March 2017 through October 2018, Plaintiffs loaned Defendants funds for varying amounts of money, the end total amount owed being $387,500. These loans were purported to be for a business venture of Defendant Ted Lezotte. Plaintiffs also allege that Defendants, specifically Defendant Ted Lezotte, attempted to obtain loans in Plaintiffs' name without Plaintiffs' consent, but that no funds were ultimately received from these attempted loans. Ultimately, none of the funds loaned were repaid, and a State Court Complaint was filed by Plaintiffs against Defendants in December 2018. The State Court Complaint alleged the following relevant paragraphs:

> 54. The Lezottes made a material representation to the Eisenmans that they would repay the Eisenmans' loaned money in a short period of time based on a loan the Lezottes received in their own name in opening a trampoline park franchise.
>
> 55. The representation that the Lezottes would repay the loan money to the Eisenmans from the bank loan to the Lezottes was false. The Lezotte [sic] never intended to acquire a bank loan in their own name. Rather, the Lezottes' scheme was to receive the bank loan in the Eisenmans' name. With this scheme, the Lezottes intended to repay the Eisenmans with their own money from a bank loan the Lezottes fraudulently obtained by impersonating the Eisenmans.
>
> 56. The Lezottes knew the representation of them repaying the loan to the Eisenmans from a bank loan in the Lezottes' own name was false at the time they made it, because they had the above-mentioned scheme in mind when they asked for the money from the Eisenmans in the first place.
>
> 57. The Lezottes made the assurances to the Eisenmans that they would repay the loaned money from the loan they received in their own name with the

        intent of the Eisenmans relying on the assurances and giving the Lezottes the loan.

58.    The Eisenmans did rely on the assurances made by the Lezottes.

59.    The Eisenmans were damaged as a result of their reliance on the Lezotte's statements because they loaned money to the Lezottes who never had any intention of repaying the money except from an "Eisenman bank loan."

60.    The damages the Eisenmans suffered amount to the $387,500 loan, plus interest, provided to the Lezottes that has not been repaid despite Ted Lezotte's assurances.

(State Court Complaint, pp. 6-7).

The State Court ultimately entered a Default Judgment in favor of Plaintiffs on April 22, 2019 in the amount of $387,500 ("State Court Default Judgment"). At the February 27, 2020 hearing, Defendant Ted Lezotte stated that he filed a motion before the State Court to set aside the State Court Default Judgment, which was denied. No procedural infirmities have been alleged by Defendants in this proceeding in connection with the State Court Default Judgment.

Defendants filed this Chapter 7 bankruptcy case on May 22, 2019, and Plaintiffs commenced this Adversary Proceeding on September 9, 2019. Plaintiffs based their Complaint for nondischargeability under 11 U.S.C. § 523(a)(2)(A) and (B), as well as (a)(4). The Adversary Complaint allegations are substantively similar to the State Court Complaint allegations. Defendants did not file an answer to the Adversary Complaint; thus, the Clerk entered a Default. Plaintiffs thereafter filed a Motion for Default Judgment on October 29, 2019, and the Court entered an Order for Default Judgment on October 30, 2019 ("Bankruptcy Default Judgment").

Defendants filed the instant Motion to Set Aside the Bankruptcy Default Judgment after reopening this case on November 27, 2019. In the Order Granting the Motion to Reopen, the Court ordered that "Defendants must file a Motion to Set Aside Default and Default Judgment by

3

December 16, 2019." Such a Motion was not filed timely; thus, this case was closed on January 8, 2020. Defendants thereafter attempted to file a motion to set aside on January 15, 2020, but such was stricken from the docket for procedural deficiencies. On January 29, 2020, the Court entered an Order Reopening Adversary Proceeding, allowing Defendants until March 31, 2020 to file a motion to set aside the Bankruptcy Default Judgment. Defendants filed a second Motion To Set Aside, this time without procedural deficiencies, on January 30, 2020. In their Motion, Defendants state that their attorney failed to respond to the Adversary Proceeding Complaint, and that they have "significant documentation that proves our innocence."

Plaintiffs object to this Motion, arguing first that it was filed late and should have been filed by the original deadline of December 16, 2019, along with other service issues. Plaintiffs also argue that Defendants have not shown they have a meritorious defense to the allegations in this Adversary Complaint so there is no basis to set the Default Judgment aside.

Law

Standard To Set Aside a Default Judgment

Federal Rule of Civil Procedure 55, as incorporated by Federal Rule of Bankruptcy Procedure 7055, subsection (c), states that the court may set aside an entry of default for "good cause shown," or if the default judgment has been entered, may "likewise set it aside in accordance with Rule 60(b)." Rule 60(b)(1) is the applicable standard to apply generally when a default judgment has already been entered under the subsection (b)(1)/excusable neglect standard.

Under Rule 60(b)(1), a court may relieve a party from a final judgment for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect

The Sixth Circuit has set forth three factors to be considered in ruling on a Motion to set aside a default judgment under Rule 60(b): (1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default. *United Coin Meter Co., Inc. v. Seaboard Coastline R.R.,* 705 F.2d 839, 844-45 (6th Cir. 1983).

Collateral Estoppel and Default Judgments

While collateral estoppel is applicable in bankruptcy dischargeability proceedings, *see Grogan v. Garner*, 498 U.S. 279, 248 (1991), a bankruptcy court must determine whether applicable state law would give collateral estoppel effect to the state court judgment. *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir. 1997). Under Michigan law, collateral estoppel has been defined by the Michigan Supreme Court:

> Collateral estoppel precludes the relitigation of an issue in a subsequent, different cause of action between the same parties where the prior proceeding culminated in a valid, final judgment and the issue was 1) actually litigated and 2) necessarily determined.

*People v. Gates*, 452 N.W.2d 627, 630 (Mich. 1990). An issue may be considered "actually litigated" for collateral estoppel determinations if it "is put into issue by the pleadings, submitted to the trier of fact, and determined by the trier of fact." A trial is not necessarily required. *Latimer v. Mueller & Son, Inc.*, 386 N.W.2d 618, 627 (Mich. Ct. App. 1986). If an issue is essential to the judgment, it is "necessarily determined." *Gates*, 452 N.W.2d at 631.

Default judgments from previous or parallel court proceedings are accepted in Bankruptcy Court with the same effect and validity as any other type of rendered judgment. Michigan courts have held that issues resolved by default judgment have collateral estoppel

5

effect with the caveat that such applies only "to those matters essential to support the judgment." *Rohe v. Scientific Corp. v. Nat'l Bank of Detroit*, 350 N.W.2d 280, 282 (Mich. Ct. App. 1984). "[A] default judgment is equivalent to an admission by the defaulting party to all of the matters well pleaded." *Sahn v. Brisson*, 204 N.W.2d 692, 694 (Mich. Ct. App. 1972). In an earlier decision, the Michigan Court of Appeals held that "[a] default judgment is just as conclusive an adjudication and as binding upon the parties of whatever is essential to support the judgment as one which has been rendered following answer and contest." *Perry & Derrick Co., Inc. v. King*, 180 N.W.2d 483, 485 (Mich. Ct. App. 1970). *See also McCallum v. Pixley (In re Pixley)*, 456 B.R. 770, 777-78 (Bankr. E.D. Mich. 2011) (holding that, in the nondischargeability proceeding before it, under Michigan law, preclusive effect is to be given to state court default judgments, which includes true default judgments).

While the *Calvert* Court had before it application of California law, the analysis of the Sixth Circuit Court of Appeals in that case supports these general policy considerations under Michigan law as well:

> While the Court's conclusion may seem harsh to Defendant, it points up the necessity of potential debtors defending such cases in state court (particularly where a bankruptcy filing is in the wind), at risk of being exposed to the adverse consequences of the collateral estoppel doctrine in the subsequent bankruptcy non-dischargeability proceeding. The *Calvert* Court pointed out that, "state court fraud suits and bankruptcy discharge proceedings are frequently the same;" a debtor is, therefore, fair warned to carefully consider the state court allegations against him in making his litigation choices.

*Calvert*, 105 F.3d at 321.

<u>11 U.S.C. § 523(a)(2)(A)</u>

Under section 727 of the Bankruptcy Code, a debtor may obtain a general discharge from all debts that arose before the order for relief. 11 U.S.C. § 727(b). However, there are

6

exceptions for certain obligations, including debts for money obtained by fraud or by use of a false statement in writing. 11 U.S.C. § 523(a)(2)(A) & (B). Section 523(a)(2)(A) provides:

> (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt –
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
> >
> > > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

To prevail on a claim under 523(a)(2)(A), a plaintiff must show that:

> (1) [T]he debtor obtained money through a material misrepresentation that at the time the debtor knew was false or that he made with reckless disregard for the truth; (2) the debtor intended to deceive; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert),* 141 F.3d 277, 280 (6th Cir. 1998). Whether a debtor possessed intent to deceive is measured by a subjective standard. *Id.*

## Analysis and Conclusion

The Court starts its analysis with a determination of whether Defendants have met the factors to set aside the Bankruptcy Default Judgment. The Court concludes that prejudice to the Plaintiffs and any culpable conduct of the Defendants, factors 1 and 3, while weaker, are arguably met by Defendants. While Plaintiffs may be prejudiced by the time lapse of roughly three months, such could be cured by payment to Plaintiffs of their reasonable costs incurred. The same is true for the culpability factor—Defendants are now representing themselves and presented a compelling case for their lack of timely responses during this adversary proceeding.

The factor that is problematic for Defendants is factor 2, whether Defendants have presented a meritorious defense to the Adversary Complaint allegations.

The State Court Default Judgment is to be given collateral estoppel effect under Michigan law. For collateral estoppel to apply, Michigan requires that the parties be the same, the prior proceeding must have culminated in a valid, final judgment, and the issue must have been actually litigated and necessarily determined. See *Gates*, 452 N.W.2d at 630. In this case, there is no question the parties were the same in the state court proceeding and this one. Further, there is no dispute that the prior judgment was valid and final. However, the Court will examine the "actually litigated" and "necessarily determined" elements.

The Court has reviewed the state court record, specifically the State Court Complaint, upon which the State Court Default Judgment was entered. While it is true that the state court did not discuss or even identify the allegations in Plaintiffs' State Court Complaint in the State Court Default Judgment, it is not required to for purposes of collateral estoppel. The entry of the State Court Default Judgment upon the submission of the issue to the trier of fact via a properly pleaded complaint is sufficient. *See Sahn*, 204 N.W.2d at 694 ("[T]he entry of a default judgment is equivalent to an admission by the defaulting party to all of the matters well pleaded." (citing *Lesisko v. Stafford*, 292 N.W. 376 (Mich. 1940); 7 *Callaghan's Michigan Pleading & Practice* (2d ed.) § 44.06, at 26).

To prevail on a claim under 523(a)(2)(A), a plaintiff must show that:

> (1) [T]he debtor obtained money through a material misrepresentation that at the time the debtor knew was false or that he made with reckless disregard for the truth; (2) the debtor intended to deceive; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert,* 141 F.3d at 280.

8

19-02054-dob    Doc 23    Filed 04/07/20    Entered 04/07/20 16:20:33    Page 8 of 9

The allegations in the State Court Complaint squarely fit within these elements for nondischargeability under Section 523(a)(2)(A). Defendants obtained the funds from Plaintiffs by making a material representation to Plaintiffs that Defendants knew was false (State Court Complaint, ¶ 54-56). The Defendants intended to deceive Plaintiffs when the loan was made State Court Complaint, ¶ 55-57). Plaintiffs did rely justifiably on these false representations (State Court Complaint, ¶ 58). Finally, Plaintiffs suffered damages in the amount of the unpaid loan, $387,500, plus interest, as the proximate result of this reliance (State Court Complaint, ¶ 59-60). The Court concludes that the State Court Default Judgment is a conclusive determination as to the elements of a Section 523(a)(2)(A) claim, and thus, was "actually litigated" and "necessarily determined." As a result, the Defendants do not have a meritorious defense. The Court therefore finds no basis to set aside the Bankruptcy Default Judgment.

The Court need not analyze the State Court Default Judgment under Section 523(a)(2)(B) and (a)(4), as the elements for nondischargeability under Section 523(a)(2) were "actually litigated" and "necessarily determined" for collateral estoppel purposes

Accordingly, the Court denies Defendants' Motion to Set Aside the Bankruptcy Default Judgment. The Court directs counsel for Plaintiffs to prepare and present an appropriate order under the appropriate entry of order procedures.

**Not for Publication**

**Signed on April 7, 2020**



/s/ Daniel S. Opperman
_____
**Daniel S. Opperman**
**United States Bankruptcy Judge**